UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK BRADFORD,<br><br>      Plaintiff,<br><br> v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>      Defendant. | NO: 13-CV-3109-TOR<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 20 & 23). These matters were heard with oral argument on September 4, 2014. Lawrence J. Kuznetz appeared on behalf of the Plaintiff. Michael Reilly appeared telephonically on behalf of Defendant. The Court has reviewed the briefing and the record and files herein, and is fully informed.

## BACKGROUND

This is an action to recover long-term disability benefits allegedly owing to Plaintiff under Section 502(a) of the Employee Retirement Income Security Act

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 1

("ERISA"), 29 U.S.C. § 1132(a).  In the instant cross-motions, the parties ask the Court to review the administrative record de novo and resolve any factual disputes concerning Plaintiff's entitlement to benefits pursuant to Federal Rule of Civil Procedure 52(a).  For the reasons discussed below, the Court finds that Plaintiff is "disabled" within the meaning of Defendant's policy and is therefore entitled to payment of benefits.

## STANDARD OF REVIEW

The parties agree that the challenged benefits decision should be reviewed de novo.  ECF No. 20 at 3; ECF No. 23 at 8.  De novo review affords no deference to the plan administrator's determination.  *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1108 (9th Cir. 2000).  The plaintiff has the burden of proof.  *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

The parties further agree that the Court should make findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a) and enter judgment.  ECF No. 23 at 9; ECF No. 24 at 10.  In an ERISA action, review under Rule 52(a) entails a "bench trial on the record" using the materials considered by the plan administrator.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999) (en banc).  Evidence outside the administrative record may only be considered when "circumstances clearly establish that it is necessary to conduct an adequate de novo review of the benefit decision."  *Ingram v. Martin Marietta Long*

*Term Disability Income Plan for Salaried Emp. of Transferred GE Operations*, 244 F.3d 1109, 1115 (9th Cir. 2001) (quotation and citation omitted). The relevant inquiry under Rule 52(a) is not whether there are genuine issues of material fact, but whether the plaintiff "is disabled within the terms of the policy." *Kearney*, 175 F.3d at 1095. The court must necessarily weigh conflicting evidence and resolve disputed factual issues. *Id.* Rule 52(a) further requires the court to "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).

## SUMMARY OF ADMINISTRATIVE RECORD

At all times relevant to these proceedings, Plaintiff Mark Bradford ("Plaintiff") was insured under a disability insurance policy issued by Defendant Life Insurance Company of North America ("Defendant"). This policy provides for long-term disability ("LTD") benefits to an insured who becomes "disabled." The policy defines the term "disability" as follows:

> An Employee is Disabled if, because of Injury or Sickness,
>
> 1. he/she is unable to perform all the material duties of his/her **regular occupation**, or solely due to Injury or Sickness, he/she is unable to earn more than 80% of his/her Index Covered Earnings; and
>
> 2. after Disability Benefits have been payable for 24 months, he/she is unable to perform all the material duties of **any occupation** for which he/she may reasonably become qualified based on education, training or experience, or solely due to Injury or Sickness, he/she is unable to earn more than 80% of his/her Indexed Covered Earnings.

ECF No. 17-7, Tr. 1192 (emphasis added).

Plaintiff began experiencing lower back pain in 1998. He subsequently underwent an L4-5 laminectomy in 1998, followed by an L4-5 fusion in 2000. These surgeries were not successful, and Plaintiff's pain became progressively worse over the next several years. Plaintiff took pain killers on a daily basis to manage his pain while he was at work. In September 2009, Plaintiff's back pain became so severe that he was unable to continue working. Plaintiff began taking sick leave and attempted to recuperate to the point that he could resume his normal work duties.

Plaintiff's efforts to recuperate were unsuccessful. On February 23, 2010, Plaintiff filed an application for LTD benefits. The application states:

> I began having low back pain and sciatica in 1998. I had two surgeries, in 1998 and 2000. I have had to take daily doses of painkillers in increasing amounts, as the years went on, simply to go to work. The rigors of my position at State Farm demanded many hours of driving, frequent travel [and] additional work in my office and home. Performing these duties caused severely increasing back and leg pain, which affected my work performance and personal life. In September of last year, I reached a point where I simply could no longer stand the pain, and was forced to take sick leave. Currently, I am incapable of sitting or lying on my back without the aid of a cushion. I can tolerate periods of standing, walking, or physical therapy up to a total of perhaps 2 hours per day without lying down, or taking prescription painkillers at a high level, which I do not wish to do.
>
> Over the last 2 years, I have had MRI's and bone scans, been referred to back specialists, and tried injections for potential nerve ablation, all to no avail. . . . I have been participating in physical therapy for 5

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 4

months religiously, currently using water therapy. I do not know if I have scar tissue from prior surgeries, if there is a problem with the metal hardware in my spine, or suffer from spinal spondylosis. I only know that supporting my low back can only be done when I am lying down. All other activity eventually leads to intolerable pain and muscle spasms that can lead to days needed to recover.

ECF No. 17-5, Tr. 741.

On March 29, 2010, Plaintiff's treating physician, Dr. Allen Skidmore, completed a physical ability assessment form at Defendant's request. Dr. Skidmore indicated that Plaintiff could sit, stand and walk "occasionally," *i.e.*, for less than 2.5 hours and/or no more than one-third of an eight hour workday. ECF No. 17-4, Tr. 670. Attached to this form were treatment notes dating back to August 2009.

On July 1, 2010, Plaintiff underwent a functional capacities evaluation ("FCE") at Defendant's request at Summit Rehabilitation Associates. The evaluator, Michael Kim, concluded that Plaintiff was capable of performing light work "with limited sitting for an 8 hour day." ECF No. 17-4, Tr. 516. Mr. Kim further determined that Plaintiff "was limited in postural tolerances and . . . qualified to sit, stand, and walk on [an] occasional basis." ECF No. 17-4, Tr. 517. According to Mr. Kim, an "occasional" postural limitation translated to "less than 30 minutes at one time and less than one third of the work day." ECF No. 17-4, Tr. 517. Mr. Kim also noted that Plaintiff was "very pleasant and cooperative,"

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 5

that he "did not demonstrate any symptom/disability exaggeration behavior," that he exhibited "good and consistent effort throughout the evaluation," and that the evaluation yielded "valid results which can be used for medical and vocational planning." ECF No. 17-4, Tr. 516. Finally, Mr. Kim made the following comment with regard to Plaintiff's ability to perform light or sedentary work:

> There needs to be a clarification regarding the previous statement regarding working at a light physical demand level. The light levels are selected from the material handling tests and based on what he is able to lift and not based on positional limitations. He would be moderately restricted in most sedentary or light levels based on poor positional tolerances. Most sedentary or light positions require frequent to constant sitting which he could not perform. Any transferrable positions would be challenging to accommodate due to the positional tolerances. The bottom line for this evaluation is that he could not perform his previous position as Insurance Agency Field Consultant due to the limited sitting tolerance. With his long history of back pain and lumbar degenerative processes, I do not expect Mr. Bradford to return to his previous position and expect this to be a long term limitation.

ECF No. 17-4, Tr. 517.

On August 3, 2010, Dr. Jamie Lewis performed a comprehensive peer review of Plaintiff's medical records at Defendant's request. Dr. Lewis determined that the limitations to occasional sitting, standing and walking imposed by Dr. Skidmore and Mr. Kim "were supported by the measured limitations in the medical documentation provided." ECF No. 17-3, Tr. 373.

On August 17, 2010, Defendant commissioned a vocational review by Larry Featherston, Ph.D. Like Dr. Lewis, Dr. Featherston found that the limitations to occasional sitting, standing and walking noted by Dr. Skidmore and Mr. Kim were supported by the medical evidence. On that basis, Dr. Featherston concluded that Plaintiff could not return to his regular occupation as an Agency Field Consultant. ECF No. 17-3, Tr. 351.

In 2010, while his claim for LTD benefits was pending, Plaintiff was awarded Social Security disability income benefits by the Social Security Administration. ECF No. 17-1, Tr. 111.

On September 2, 2010, Defendant determined that Plaintiff was unable to perform all the material duties of his regular occupation as a State Farm Agency Field Consultant and approved Plaintiff to receive LTD benefits for 24 months pursuant to the policy. ECF No. 17-2, Tr. 275. A notation in Defendant's claim file associated with this decision reads:

> Claim was [overturned] in appeal based on FCE showing light ability but no prolonged sitting. [Plaintiff's] [current occupation] is light however requires extensive travel and this would involve prolonged sitting. A job analysis and [vocational] review was done and found [Plaintiff] did meet definition of [total disability] [in] his [current occupation] with that restriction. Claimant was awarded SSDIS while on appeal so I will update the financial folder and pay to current. I will send for settlement review as well because the prolonged [sitting restriction] would not allow for sed[entary] work either.

ECF No. 17-1, Tr. 111.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 7

On January 19, 2011, Defendant mailed Plaintiff a letter advising him that the policy definition of total disability would soon change from unable to perform the material duties of his "regular occupation" to unable to perform the material duties of "any occupation." Defendant informed Plaintiff that it had begun a "review" to determine whether he would remain eligible to receive LTD benefits after the definition changed. ECF No. 17-3, Tr. 329-30.

On February 21, 2011, Dr. Skidmore completed a disability medical request form and physical ability assessment at Defendant's request. Dr. Skidmore restricted Plaintiff to "no prolonged sitting," and "no sitting, driving or standing [for] more than 20 minutes at a time." ECF No. 17-6, Tr. 814. With regard to potential accommodations, Dr. Skidmore indicated that he "[knew] of no job that allows you to go lay down every hour." ECF No. 17-6, Tr. 814. As he had done previously, Dr. Skidmore checked the boxes for "occasionally" next to sitting, standing and walking on the physical ability assessment form. ECF No. 17-6, Tr. 815. He further indicated that Plaintiff "has had no significant improvement since I last completed similar paperwork [on] 3-29-2010." ECF No. 17-6, Tr. 816.

During the summer months of 2011, Defendant engaged the services of a private investigator to periodically monitor Plaintiff's movements. This surveillance produced information that was generally consistent with Plaintiff's claimed limitations and level of physical activity.

On August 22, 2011, Plaintiff reported to Summit Rehabilitation Associates at Defendant's request for a second functional capacities evaluation. The evaluator, Mr. Robert Hoctor, indicated that Plaintiff's "patterns of movement and physiological responses were consistent with maximal effort," and that Plaintiff "demonstrated cooperative behavior and was willing to work to maximum abilities in all test items." ECF No. 17-6, Tr. 994. Mr. Hoctor further noted that Plaintiff's performance was consistent among all evaluated items, that his functional limitations were consistent with his physical impairments and diagnosis, and that his perceived abilities were consistent with his objectively-identified functional abilities. ECF No. 17-6, Tr. 994. With regard to pain reporting, Mr. Hoctor observed that Plaintiff's reported level of pain was slightly higher than could be objectively verified: "Some symptom magnification appears to be present. Such high pain reports were not consistently supported by objective signs of discomfort." ECF No. 17-6, Tr. 994. Mr. Hoctor noted, however, that this degree of symptom magnification "did not affect the FCE results and may have been due to normal personality traits, anxiety regarding re-injury, a misunderstanding of the self report pain scales or other similar factors." ECF No. 17-6, Tr. 994. Mr. Hoctor limited Plaintiff to occasional sitting, occasional standing and occasional walking, meaning that Plaintiff could perform these activities for no more than 2.5

hours in an 8-hour workday and/or no more than one-third of the time.  ECF No. 17-6, Tr. 995-96.

On February 9, 2012, Defendant engaged Dr. Featherston to perform a transferable skills analysis ("TSA") to determine whether Plaintiff could "perform all the material duties of any occupation for which [he] may reasonably become qualified based on education, training or experience."  Based upon his assessment of Plaintiff's transferrable skills, Dr. Featherston concluded that Plaintiff could perform the occupations of Office Manager at an annual salary of $130,950, or Department Manager at a salary of $123,560.  Dr. Featherston indicated that these occupations "are found to fit the given limitations and restrictions" in the August 2011 FCE performed by Mr. Hoctor.  ECF No. 17-6, Tr. 1015.

On February 13, 2012, Defendant mailed Plaintiff a letter stating that it was terminating Plaintiff's ongoing LTD benefits effective July 29, 2012, because "the documentation currently contained in your claim file does not support your inability to function in any occupation."  ECF No. 17-2, Tr. 216-17.  The letter further indicates that the decision to deny benefits was based upon Dr. Featherston's TSA and a "Functional Capacity Evaluation dated August 22, 2011 documenting [that] your current demonstrated level of functioning is sedentary."  ECF No. 17-2, Tr. 216.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 10

On August 20, 2012, Fred Cutler performed a vocational evaluation of Plaintiff at the request of Plaintiff's attorney. After reviewing Plaintiff's medical records and the August 2011 FCE, Mr. Cutler concluded that Plaintiff could not perform the occupations of Office Manager or Department Manager as Dr. Featherston had suggested in his February 2012 TSA because those occupations are classified as sedentary and require frequent sitting:

> A problem with the assessment of transferrable skills [performed by Dr. Featherston] is that the reference physical capacity was apparently set at a sedentary level. Mr. Hoctor's description of Mr. Bradford's physical capacities clearly states that Mr. Bradford can only sit on an occasional basis. Even if one wanted to argue over whether or not he could work on his feet for more than an occasional basis, it is clear that he could only occasionally sit in the jobs described[.] These are jobs that are done primarily in a sitting position and thus would not be appropriate for Mr. Bradford under any circumstances.

ECF No. 17-6, Tr. 1005.

On January 25, 2013, Plaintiff's treating physician, Dr. Skidmore, provided an up-to-date assessment of Plaintiff's ability to work. The assessment states, in pertinent part:

> It is my opinion that Mark's medical condition is consistent with his subjective complaints and limitations in functioning. I do not believe he is exaggerating his complaints and limitations. It is my professional opinion that Mark is not capable of performing any meaningful employment. He can stand and walk for approximately 20 minutes at a time. This then needs to be followed by approximately one hour of rest. When he pushes to 25 or 30 minutes of continuous standing and/or walking he is usually done for the rest of the day. In the past two years, I have not observed him able to sit

for more than a few minutes without adjusting his position or temporarily standing or lying down.

* * *

I have known Mark to be honest in all his dealings with me. I have never suspected him of malingering or exaggerating his symptoms in order to obtain pain medication or work restrictions. I have seen plenty of other patients who I believe are exaggerating their symptoms and whose physical examinations do not correlate with their stories, but Mark is not one of them. I expect he tried hard during the FCE and was able to stand for 25 minutes and performed whatever tasks the evaluator reported he performed. But performing these tasks for a few minutes does not reflect what he can do for an entire workday on a day in and day out basis.

* * *

I have done everything I know how, and Mark has cooperated and done everything that I have asked him to do in [an] attempt to improve his condition[,] but unfortunately his pain remains severe and debilitating.

In summary, it is my opinion that Mark is unable to work due to his medical condition and I don't think he is exaggerating or faking it.

ECF No. 17-6, Tr. 776-77.

Plaintiff appealed Defendant's denial of continuing LTD benefits on February 13, 2013. ECF No. 17-6, Tr. 786-91. In conjunction with this appeal, Plaintiff furnished the August 2012 vocational evaluation performed by Mr. Cutler and the January 2013 assessment provided by Dr. Skidmore.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 12

On March 5, 2013, Defendant obtained a peer review of Plaintiff's medical records and claims file from Dr. Ephraim Brenman. Without a personal examination of Plaintiff, Dr. Brenman concluded, *inter alia*:

> The restrictions and limitations supported that were put forth by the provider Dr. Skidmore are not appropriate from 07/29/2012 and continuing. The claimant is not precluded from working altogether.
>
> The claimant did have an FCE that showed the claimant could work at a light physical demand level occasionally. In my opinion, the claimant can lift up to 10 pounds frequently. The claimant has no restrictions to sitting. The claimant is able to stand up to 4 hours a day total out of an 8-hour day, walk up to 30 minutes at a time, needing a 2- to 3-minute break to stop and stretch. The claimant can walk up to 2 hours a day total out of an 8-hour day, up to 15 minutes at a time, needing a 2- to 3-minute break to stop and stretch.
>
> *    *    *
>
> In my opinion, the FCE is an adequate representation of Mr. Bradford's functionality, due to the fact that it did show that the claimant did give an effort, and it showed that the claimant was occasionally able to occasionally work at a light physical demand level. If the claimant was able to do that, the claimant can more than occasionally work and perform at a sedentary physical demand level as identified with the above restrictions and limitations. In my opinion, the claimant can perform at this level during an 8-hour work day.

ECF No. 17-6, Tr. 771-72.

Defendant denied Plaintiff's appeal on April 4, 2013. In its denial letter, Defendant explained:

> After review of the entirety of the medical documentation contained in the file, our assessment is that the medical documentation on file is

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 13

> supportive of [Plaintiff] being able to function within the physical demands of the occupations identified in the February 9, 2012 Transferable Skills Analysis (TSA).
>
> The Findings of the August 22, 2011 FCE are found to be an adequate representation of Mr. Bradford's functionality. **The Clinical record supports that Mr. Bradford maintains the ability to work at a sedentary functional capacity for a full eight hour day.** Whereas Dr. Skidmore has opined that Mr. Bradford requires breaks to lay down each hour, this is not clinically supported by the medical documentation on file.
>
> * * *
>
> We do not dispute that [Plaintiff] may have been somewhat limited or restricted due to his subsequent diagnoses and treatment; however, an explanation of his functionality and how his functional capacity continuously prevented him from performing the material duties of any occupation from July 30, 2012 and beyond was not clinically supported. The presence of a condition, diagnosis or treatment does not necessarily equate to a presence of a disabling condition or decreased level of functionality. As such, we are affirming our previous decision[.]

ECF No. 17-2, Tr. 206 (emphasis added). With regard to Plaintiff's receipt of Social Security disability insurance benefits, Defendant stated: "We are aware that [Plaintiff] has been awarded [Social Security benefits], and have considered that fact in our claim review. We have confirmed that there is no new information in [the] SS file since the time of his initial Social Security award. As a result, we are in receipt of more recent information than the SSA had to consider at the time of its decision." ECF No. 17-2, Tr. 206.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 14

Plaintiff subsequently submitted to Defendant (1) a response from Mr. Cutler to Dr. Brenman's peer review; (2) a response from Dr. Skidmore to the same; and (3) Dr. Skidmore's chart notes from an office visit on July 18, 2013. ECF No. 12-1.[1]  Defendant declined to consider these materials because "no medical documentation has been provided for review that is time-concurrent to the period for review or has not already been reviewed." ECF No. 17-2, Tr. 203.

## FINDINGS OF FACT

Having thoroughly reviewed the record de novo, the Court makes the following findings of fact pursuant to Rule 52(a)(1):

1. The Court fully credits the opinions of Plaintiff's treating physician, Dr. Allen Skidmore. As Plaintiff's treating physician since 2009, Dr. Skidmore is by far and away the person most qualified to render an opinion about Plaintiff's functional abilities. His opinions about Plaintiff's ability to maintain full-time employment are internally consistent, well-supported by detailed treatment notes, and grounded in personal observations of Plaintiff's symptoms and behaviors over an extended period of time. To be clear, the Court is not affording Dr. Skidmore's

---

[1] In this court, Defendant objected to Plaintiff's supplementation of the administrative record with these documents. ECF No. 18. Whether or not these records are properly part of the underlying record, the Court has not relied on these additional documents in support of its decision.

opinions "special deference" simply because he is Plaintiff's treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003) (holding that ERISA plan administrators "are not obliged to accord special deference to the opinions of treating physicians"). Instead, the Court is crediting Dr. Skidmore's opinions because they are well-supported by the factual record. Finally, the Court finds it significant that Dr. Skidmore went out of his way to explain that, unlike other patients he had treated for allegedly debilitating back pain, Plaintiff was fully credible and was not "faking it."

  2. The Court also fully credits the July 2010 FCE performed by Michael Kim. Mr. Kim limited Plaintiff to "occasional" sitting, standing and walking, with the caveat that these activities occur "less than 30 minutes at one time and less than one third of the work day." These restrictions are entirely consistent with the restrictions identified by Dr. Skidmore and are supported by the record as a whole. The Court also assigns great weight to Mr. Kim's conclusion that Plaintiff "would be moderately restricted in most sedentary or light levels based on poor positional tolerances. ***Most sedentary or light positions require frequent to constant sitting which he could not perform.***" ECF No. 17-4, Tr. 517 (emphasis added).

  3. The Court further credits the August 2011 FCE performed by Robert Hoctor to the extent that it (1) limits Plaintiff to occasional sitting, standing and walking; and (2) notes that Plaintiff frequently shifted his weight, exhibited an

1    impaired sitting posture, and reported low back pain while sitting. These findings
2    and observations are consistent with those of Dr. Skidmore and Mr. Kim, and are
3    consistent with the record as a whole.

4        4.    The Court rejects the opinions set forth in the March 2013 peer review
5    of Plaintiff's medical records and claims file performed by Dr. Brenman.
6    Inexplicably, Dr. Brenman opined that Plaintiff "has no restrictions to sitting."
7    ECF No. 17-6, Tr. 771. This conclusion runs directly contrary to the FCE upon
8    which Dr. Brenman purported to rely and is manifestly inconsistent with the record
9    as a whole. Dr. Brenman further opined that if Plaintiff "was occasionally able to
10   occasionally work at a light physical demand level," then by logical extension
11   Plaintiff "can more than occasionally work and perform at a sedentary physical
12   demand level." This conclusion conflicts with Mr. Kim's opinion, which the Court
13   has fully credited, that sedentary positions require far more sitting than Plaintiff
14   can tolerate.

15       5.    The Court further rejects Dr. Featherston's opinion that Plaintiff can
16   perform the duties of an Office Manager or a Department Manager because it also
17   does not account for the sitting restrictions noted above. As Mr. Cutler explained,
18   "[t]hese are jobs that are done primarily in a sitting position and thus would not be
19   appropriate for Mr. Bradford under any circumstances." Dr. Featherston's failure
20   to address the amount of sitting required by these jobs is particularly conspicuous

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 17

in light of his earlier finding in August 2010 that Plaintiff could not perform the essential duties of his regular occupation due to the amount of sitting it required (3.5 hours). ECF No. 17-3, Tr. 351.

6. The Court also finds it significant that Plaintiff was awarded Social Security disability insurance benefits in 2010. Defendant claims to have considered this fact in reaching its decision, but its denial of coverage letter makes no meaningful attempt to explain why it reached a different conclusion than the Social Security Administration regarding Plaintiff's ability to maintain full-time employment. Although the SSA's determination is not binding on Defendant, Defendant's failure to meaningfully address it "raises questions about whether [its] adverse benefits determination was the product of a principled and deliberative reasoning process." *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 635 (9th Cir. 2009) (quotation and citation omitted). Further, while the Defendant professes to have more recent information than the Social Security Administration, the Court has rejected the conclusions of non-disability reached in those more recent reports.

7. Finally, the Court finds that Defendant's justification for denying benefits cannot be squared with its determination in September 2010 that Plaintiff could not perform sedentary work. After reviewing the July 2010 FCE performed by Mr. Kim, the August 2010 peer review performed by Dr. Lewis, and the August

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 18

2010 vocational review performed by Dr. Featherston, Defendant initiated a full claims settlement review "because the [restriction on prolonged sitting] ***would not allow for sed[entarty] work either***." ECF No. 17-1, Tr. 111 (emphasis added). Defendant's recognition that Plaintiff could not perform sedentary work severely undermines its stated reason for later denying benefits: that "[t]he Clinical record supports that [Plaintiff] maintains the ability to work at a sedentary functional capacity for a full eight hour day." ECF No. 17-2, Tr. 206. As Defendant realized in September 2010, the record plainly does *not* support a finding that Plaintiff can perform sedentary work for eight hours per day. While Defendant contends the record supports a finding that Plaintiff's condition improved, that is not the Court's finding. In weighing all the evidence, including Mr. Hoctor's conclusion (ECF No. 17-6, Tr. 995), in part, the Court finds Plaintiff can sit for much less than one third of the work day and in combination can walk and stand for one third or less of the work day. In total, Plaintiff cannot complete an entire work day.

## CONCLUSIONS OF LAW

Based upon the findings of fact above, the Court makes the following conclusions of law pursuant to Rule 52(a)(1):

1. Plaintiff is "disabled" as that term is defined in the policy because he is "unable to perform all the material duties of any occupation for which he may reasonably become qualified based on education, training or experience."

2. By virtue of being "disabled," Plaintiff is entitled to payment of full benefits under the policy.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **GRANTED**.

2. Defendant's Cross-Motion for Summary Judgment (ECF No. 23) is **DENIED**.

3. To the extent Plaintiff seeks an award of attorney's fees, the motion shall be filed on or before **September 26, 2014**.

The District Court Executive is hereby directed to enter this Order, provide copies to counsel, and enter **JUDGMENT** for Plaintiff. The file will remain open until resolution of fees and costs.

**DATED** September 8, 2014.



THOMAS O. RICE
United States District Judge